UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSEPH W. BULLARD,

 Petitioner,

v.         Case No. 8:23-cv-1776-MSS-CPT

SECRETARY, DEPARTMENT
OF CORRECTIONS,

 Respondent.
_____/

## O R D E R

 Bullard filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his state court convictions for one count of possession of child pornography with the intent to promote and fifty counts of possession of child pornography. (Doc. 1) The Respondent asserts that the petition is an unauthorized second or successive petition and untimely. (Doc. 8) After reviewing the petition, the response, the reply (Doc. 10), and the relevant state court record (Doc. 9), the Court **DISMISSES** in part and **DENIES** in part Bullard's petition.

## PROCEDURAL HISTORY

 A jury found Bullard guilty of the one count of possession of child pornography with intent to promote and fifty counts of possession of child pornography. (Doc. 9-2 at 80–114) The trial judge sentenced Bullard to an aggregate sentence of sixty years in

1

prison. (Doc. 9-2 at 121–75) Bullard appealed, and the state appellate court affirmed. (Doc. 9-2 at 285)

The post-conviction court granted Bullard's motion to correct an illegal sentence because the written sentence did not accurately reflect the oral pronouncement. (Doc. 8-2 at 293–95) On February 6, 2013, the trial judge entered an amended judgment, *nunc pro tunc* to August 9, 2010, the date of the original judgment. (Doc. 9-2 at 297–53)

On September 23, 2016, this Court dismissed as untimely Bullard's petition for a writ of habeas corpus under 28 U.S.C. § 2254. *Bullard v. Sec'y, Dep't Corrs.*, No. 8:13-cv-2375-MSS-TBM (M.D. Fla.), ECF No. 23. Bullard did not appeal.

In 2020, the post-conviction court granted in part Bullard's motion to correct an illegal sentence. (Doc. 9-3 at 346–51) Bullard was convicted of fifty-one second-degree felonies. (Doc. 9-2 at 297–98) The trial judge had sentenced Bullard to 180 months, or fifteen years, in prison for each conviction and ran some convictions consecutively to impose the aggregate sixty-year prison sentence. (Doc. 9-2 at 299–352) Bullard's lowest permissible sentence for each conviction was 671.85 months, or almost fifty-six years, in prison. (Doc. 9-3 at 347–48) Paradoxically, Bullard complained that the trial judge should have imposed a sentence of fifty-six years in prison for each conviction, instead of a sentence of fifteen years in prison. (Doc. 9-3 at 307) The post-conviction court agreed and determined that Bullard's fifteen-year prison sentences for each conviction were illegal. (Doc. 9-3 at 347–50)

After considering new evidence at a sentencing hearing, the trial judge reduced Bullard's sentence to twenty years in prison followed by thirty years of probation. (Doc. 9-3 at 368–69) The trial judge departed downward to reach the new aggregate twenty-year prison sentence. (Doc. 9-3 at 374–76) On August 12, 2021, the trial judge entered the second amended judgment, *nunc pro tunc* to August 9, 2010, the date of the original judgment. (Doc. 9-3 at 378–84)

On May 11, 2022, the court of appeals denied Bullard's application for leave to file a second or successive petition under 28 U.S.C. § 2244(b). *In re: Joseph Bullard*, No. 22-11300-F (11th Cir.).

On August 2, 2023, Bullard filed the second Section 2254 petition in this case. (Doc. 1) In Ground One, Bullard asserts that law enforcement officers violated his federal right to due process by destroying data on a hard drive that would have supported an alibi defense. (Doc. 1 at 5, 13–16) He further asserts that trial counsel deficiently performed by not requesting the prosecutor to disclose the exculpatory evidence and by not presenting the evidence at trial. (Doc. 1 at 13–14) In Ground Two, he asserts that his convictions for possession of child pornography violated his right against double jeopardy. (Doc. 1 at 18–19)

## ANALYSIS

Because Bullard filed his Section 2254 petition after the enactment of the Antiterrorism and Effective Death Penalty Act, AEDPA applies. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997).

### Bar on a Second or Successive Petition

Under AEDPA, "before a petitioner may file a second or successive Section 2254 habeas petition, the petitioner first must obtain an order from [the court of appeals] authorizing the district court to consider the petition." *Osbourne v. Sec'y, Fla. Dep't Corrs.*, 968 F.3d 1261, 1264 (11th Cir. 2020) (citing 28 U.S.C. § 2244(b)(3)(A)). "Absent authorization from [the court of appeals], the district court lacks jurisdiction to consider a second or successive habeas petition." *Osbourne*, 968 F.3d at 1264. "However, 'where . . . there is a new judgment intervening between the two habeas petitions, an application challenging the resulting new judgment is not second or successive[.]'" *Osbourne*, 968 F.3d at 1264 (quoting *Magwood v. Patterson*, 561 U.S. 320, 341–42 (2010)). "'[T]he judgment that matters for purposes of Section 2244 is the judgment authorizing the petitioner's confinement.'" *Osbourne*, 968 F.3d at 1265 (quoting *Patterson v. Sec'y, Fla. Dep't Corrs.*, 849 F.3d 1321, 1325 (11th Cir. 2017)).

Because this Court adjudicated Bullard's earlier petition on the merits by dismissing the petition as time barred, Section 2244(b) requires Bullard to obtain permission from the court of appeals before filing a second or successive petition, unless the second amended judgment is a new judgment under Section 2244(b).

*Patterson*, 849 F.3d at 1325 ("When his first federal petition was dismissed as untimely, Patterson lost his one chance to obtain federal habeas review of his 1998 judgment.").

After this Court dismissed Bullard's earlier Section 2254 petition, the post-conviction court granted in part Bullard's motion to correct an illegal sentence. (Doc. 9-3 at 346–51) At the sentencing hearing, the trial judge departed downward and reduced Bullard's sentence from sixty years in prison to twenty years in prison. (Doc. 9-3 at 373–76) In a sentencing order, the trial judge imposed the new sentences, *nunc pro tunc* to August 9, 2010, the date of the original judgment. (Doc. 9-3 at 376) The second amended judgment is titled "Judgment Resentence to Twenty Years FSP, *Nunc Pro Tunc* to August 9, 2010." (Doc. 9-3 at 378) The trial judge signed the second amended judgment on "August 4, 2021, *Nunc Pro Tunc* to August 9, 2010." (Doc. 9-3 at 381) The second amended sentence states "Amended Sentence per Hearing August 4, 2021, Defendant Resentenced to Twenty Years FSP, *Nunc Pro Tunc* to August 9, 2010." (Doc. 9-3 at 382)

*Osbourne*, 968 F.3d at 1266–67, holds that a petitioner's amended judgment, entered *nunc pro tunc* to the date of the original judgment, relates back to the original judgment and therefore is not a new judgment under Section 2244(b).

In *Osbourne*, 968 F.3d at 1266 n.4, the Eleventh Circuit refused to review whether the state court properly entered the amended sentence, *nunc pro tunc* to the date of the original judgment:

We note Florida law also provides that "when the court wholly omits an order or wishes to change it, the new order cannot be entered *nunc pro tunc*." *Riha's Estate*, 369 So. 2d at 404. However, Osbourne did not challenge the imposition of the amended sentence *nunc pro tunc* in state court, despite having the opportunity to do so. Further, he does not raise any challenge to the *nunc pro tunc* designation now. Under these circumstances and because the propriety of labeling a Florida judgment "*nunc pro tunc*" is a matter of state law, we do not opine as to whether the imposition of the amended sentence in his case was the proper or correct use of a *nunc pro tunc* designation under Florida law. That is a matter best left to the province of the state court. *See Coleman v. Thompson*, 501 U.S. 722, 731 (1991) ("Because 'it would be unseemly in our dual system of government for a federal . . . court to upset a state court conviction without an opportunity to the state courts to correct [an alleged] violation,' federal courts apply the doctrine of comity, which 'teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.'" (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)). Our decision here is limited to the effect of the *nunc pro tunc* designation under Florida law and what effect that designation has on whether the judgment is a new judgment for purposes of Section 2244(b).

Because the trial judge entered Bullard's second amended judgment *nunc pro tunc* to the date of the original judgment (Doc. 9-3 at 378–84), the second amended judgment is not a new judgment under Section 2244(b). *Cassidy v. Sec'y, Fla. Dep't Corrs.*, 119 F.4th 1336, 1341 (11th Cir. 2024) ("We stated that '*the determining factor as to whether the state court judgment is a new judgment for purposes of Section 2244(b) turns on the nunc pro tunc designation*.'") (quoting *Osbourne*, 968 F.3d at 1266) (italics in original).

However, "'claims based on a *factual* predicate not previously discoverable are successive,' but '[i]f . . . the purported defect did not arise, or the claim did not ripen, until after the conclusion of the previous petition, the later petition based on that defect may be non-successive.'" *Stewart v. United States*, 646 F.3d 856, 863 (11th Cir. 2011) (quoting *Leal Garcia v. Quarterman*, 573 F.3d 214, 221, 222 (5th Cir. 2009)) (italics in original).

In Ground One, Bullard asserts that a law enforcement officer violated his federal right to due process by destroying exculpatory evidence on a hard drive. (Doc. 1 at 5, 13–16) He alleges that, on February 22, 2017, during a meeting with his post-conviction counsel, he learned that a law enforcement officer destroyed the hard drive in late 2016 or early 2017. (Docs. 1 at 15 and 10 at 3) Also, he asserts that trial counsel deficiently performed by failing to request from the prosecutor the exculpatory evidence on the hard drive and by failing to present the evidence at trial. (Doc. 1 at 13–14)

The destruction of the exculpatory evidence is a factual predicate of Bullard's federal due process claim. On September 23, 2016, this Court dismissed as untimely Bullard's first Section 2254 petition. *Bullard*, No. 8:13-cv-2375-MSS-TBM (M.D. Fla.), ECF No. 23. Because Bullard contends that a law enforcement officer destroyed the hard drive in late 2016 or early 2017, after the order dismissing the initial petition entered, the claim is not successive. *Stewart*, 646 F.3d at 863.

Trial counsel's failure to both request from the prosecutor the exculpatory evidence and present the evidence at trial is the factual predicate of Bullard's ineffective

assistance of counsel claim. Bullard alleges that, on August 14, 2009, during a meeting with trial counsel, he told trial counsel about the exculpatory evidence, and trial counsel responded that the evidence did not support a defense. (Doc. 1 at 13) He further alleges that, in 2010, during trial, trial counsel failed to present the evidence. (Doc. 1 at 14)

Because Bullard admits that he knew about trial counsel's deficient performance before the order dismissing his initial petition entered and because Bullard could have raised the ineffective assistance of counsel claim in his initial petition, the ineffective assistance of counsel claim does not "fall[ ] within . . . a small subset of unavailable claims that must not be categorized as successive." *Stewart*, 646 F.3d at 863. *Holland v. Sec'y, Fla. Dep't Corrs.*, 941 F.3d 1285, 1287 (11th Cir. 2019) ("Holland has already filed two habeas petitions in federal court. The first of those petitions was denied on the merits. That means any later petition — containing claims, like the ones here, that could have been raised when Holland filed his initial Section 2254 petition — that Holland filed is considered 'successive' and must meet the requirements set out in 28 U.S.C. § 2244(b).").

Also, in Ground Two, Bullard asserts that the information filed in his state criminal case demonstrates that his convictions and sentences violate his right against double jeopardy. (Doc. 1 at 18–19) Because Bullard knew or should have known about the allegations in the information before the order dismissing his initial petition entered, and because Bullard could have raised the double jeopardy claim in his initial petition, the claim is successive. *Stewart*, 646 F.3d at 863.

Accordingly, the ineffective assistance of counsel claim in Ground One and the double jeopardy claim in Ground Two are **DISMISSED** for lack of jurisdiction.

**Time Bar**

Under AEDPA, a one-year statute of limitations applies to a Section 2254 petition. Under 28 U.S.C. § 2244(d)(1), the limitation starts from the latest of:

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

In Ground One, Bullard asserts that a law enforcement officer violated his federal right to due process by destroying exculpatory evidence on a hard drive. (Doc. 1 at 5, 13–16) He alleges that, on February 22, 2017, during a meeting with his post-conviction counsel, he learned that a law enforcement officer destroyed the hard drive in late 2016 or early 2017. (Docs. 1 at 15 and 9-2 at 80) Bullard contends that evidence on the hard drive supported an alibi defense. (Docs. 1 at 15–16 and 10 at 2)

Because with the exercise of due diligence Bullard could not have discovered this factual predicate of the claim until February 22, 2017, the limitation started under Section 2244(d)(1)(D), on February 22, 2017. *Cole v. Warden, Ga. State Prison*, 768 F.3d 1150, 1156 (11th Cir. 2014) ("Due diligence . . . is an inexact measure of how much delay is too much. Therefore, the due diligence required of a state prisoner in filing a Section 2254 habeas petition must be determined on a case-by-case basis relative to the factual predicate.") (citations and internal quotations omitted).

"[A] properly filed application for State post-conviction or other collateral review" tolls the limitation. 28 U.S.C. § 2244(d)(2). When Bullard discovered the factual predicate of his claim, his motion for post-conviction relief was pending. The post-conviction court denied relief (Doc. 9-2 at 642–53), Bullard appealed, and the state appellate court affirmed. (Doc. 9-2 at 890) The limitation continued to toll until September 21, 2018, when the mandate on appeal issued. (Doc. 9-2 at 892) *Nyland v. Moore*, 216 F.3d 1264, 1267 (11th Cir. 2000).

On September 13, 2017, before the limitation resumed, Bullard placed in the hands of prison officials for mailing a motion for post-conviction relief based on newly discovered evidence. (Doc. 9-3 at 5–25) The post-conviction court denied relief (Doc. 9-3 at 109–12), Bullard appealed, and the state appellate court affirmed. (Doc. 9-3 at 293) The limitation continued to toll until May 6, 2020, when the mandate on appeal issued. (Doc. 9-3 at 302) *Nyland*, 216 F.3d at 1267.

On September 3, 2019, before the limitation resumed, Bullard placed in the hands of prison officials for mailing a motion to correct an illegal sentence. (Doc.

10

9-3 at 304–11) On May 14, 2020, the post-conviction court granted in part and denied in part the motion. (Doc. 9-3 at 346–51) Bullard did not appeal the order denying in part relief. After a resentencing hearing, the trial judge resentenced Bullard and entered the new judgment *nunc pro tunc* to August 9, 2010, the date of the original judgment. (Doc. 9-3 at 378–84) Because the trial judge entered the new judgment *nunc pro tunc* to the date of the original judgment, the new judgment did not reset the limitation. *Cassidy*, 119 F.4th at 1341–42. The time to appeal the order denying in part relief expired thirty days after the order entered — June 15, 2020[1]. Fla. R. App. P. 9.110(b) and 9.141(b)(1). Consequently, the limitation started to run the next day. *Cramer v. Sec'y, Dep't Corrs.*, 461 F.3d 1380, 1383 (11th Cir. 2006).

The limitation ran for 365 days and expired on June 16, 2021. On August 2, 2023, Bullard placed in the hands of prison officials for mailing his Section 2254 petition. (Doc. 1) In the Section 2254 petition, Bullard raised the federal due process claim in Ground One. (Doc. 1 at 5, 13–16) Consequently, the federal due process claim is untimely.

On December 7, 2021, Bullard filed a petition for a writ of habeas corpus in the Florida Supreme Court (Doc. 9-3 at 412–36), and the Florida Supreme Court dismissed the petition as procedurally barred. (Doc. 9-3 at 438) Also, on April 5, 2022, Bullard filed a motion for post-conviction relief (Doc. 9-3 at 441–69), and the post-conviction court dismissed the motion as untimely. (Doc. 9-3 at 662–64)

---

[1] Because the time to appeal expired on Saturday, June 13, 2020, the deadline extended to Monday, June 15, 2020. Fla. R. Jud. Admin. 2.514(a)(1)(C).

Because Bullard untimely filed the motion for post-conviction relief, the motion did not toll the limitation. *Jones v. Sec'y, Fla. Dep't Corrs.*, 906 F.3d 1339, 1350 (11th Cir. 2018). Also, because Bullard filed both the petition and the motion after the limitation expired, neither tolled the limitation. *Sibley v. Culliver*, 377 F.3d 1196, 1204 (11th Cir. 2004) ("[O]nce a deadline has expired, there is nothing left to toll. A state court filing after the federal habeas filing deadline does not revive it.").

Bullard contends that the destruction of evidence by law enforcement is a miscarriage of justice that justifies relief. (Doc. 10 at 9–14) However, to excuse the time bar, Bullard must demonstrate a miscarriage of justice based on actual innocence. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). "[T]enable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin*, 569 U.S. at 386 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). "To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324. Because Bullard fails to present any new reliable evidence that demonstrates actual innocence, a miscarriage of justice does not excuse the time bar.

**Merits**

In Ground One, Bullard asserts that a law enforcement officer violated his federal right to due process by destroying exculpatory evidence on the hard drive. (Doc. 1 at 5, 13–16)

Bullard's trial occurred in 2010. (Doc. 9-2 at 114) Bullard contends that the law enforcement officer destroyed the evidence in late 2016 or early 2017, during his post-conviction proceedings. (Docs. 1 at 15 and 10 at 3) Because Bullard's claim is based on the prosecutor's failure to preserve and disclose relevant evidence during collateral proceedings, his claim is not cognizable on federal habeas. *Carroll v. Sec'y, Dep't Corrs.*, 574 F.3d 1354, 1365 (11th Cir. 2009) ("[The Eleventh Circuit] has repeatedly held defects in state collateral proceedings do not provide a basis for habeas relief. . . . [A] challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment — *i.e.,* the conviction itself — and thus habeas relief is not an appropriate remedy.") (citations omitted).

Also, under Section 2254(d), Bullard must demonstrate that the post-conviction court either ruled contrary to clearly established law as determined by the United States Supreme Court, unreasonably applied clearly established law, or unreasonably determined a fact in light of the relevant state court record. *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000); *Brumfield v. Cain*, 576 U.S. 305, 313–14 (2015). Clearly established federal law refers to a holding of an opinion by the United States Supreme Court at the time of the relevant state court decision. *Williams*, 529 U.S. at 412.

*Arizona v. Youngblood*, 488 U.S. 51 (1988), and companion case *California v. Trombetta*, 467 U.S. 479 (1984), apply to the destruction of evidence before trial. Because Bullard contends that the law enforcement officer destroyed the evidence in his case in 2016 or 2017, six or seven years *after* his trial (Docs. 1 at 15 and 10 at 3), Bullard fails to demonstrate that the state court either ruled contrary to or unreasonably applied *Youngblood* and *Trombetta*. *White v. Woodall*, 572 U.S. 415, 426 (2014) ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error."). *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) ("With regard to the destruction-of-evidence claim, the district court held that *Trombetta* and *Youngblood*, the leading cases on this issue, were inapplicable in this case because both *Trombetta* and *Youngblood* involved the pre-trial destruction of evidence. The district court concluded that because the Supreme Court has not clearly established that post-conviction destruction is a due process violation, the petitioner's claim in this regard [ ] was not cognizable on federal habeas review. We agree . . . .") (citations omitted).

The post-conviction court denied the federal due process claim as follows (Doc. 9-3 at 110–11) (state court record citations omitted):

> In his sworn motion, Defendant alleges newly discovered evidence. Specifically, he alleges FDLE and the Office of the State Attorney destroyed exculpatory [and] potentially useful evidence in bad faith in violation of Defendant's due process rights guaranteed to him by Article I, Sections 9 and 16 of the Florida Constitution, Amendments Six and Fourteen of the United States Constitution, and the United

States Supreme Court ruling in *Arizona v. Youngblood*, 488 U.S. 51 (1988). He alleges that on August 14, 2009, he spoke to his counsel Mr. Robert Mactavish for the first time and informed him that the seized evidence, namely the computers' hard drives contained exculpatory [and] potentially useful evidence. He alleges such evidence included employment history, bill payment history, veterinary hospital visits, vehicle maintenance history, hospital and doctor visits for Defendant, Defendant's mother, his ex-fiance, and Defendant's mother's boyfriend. He alleges he was the only licensed driver in the household during the time of the investigation and his arrest in this case. He alleges that at the time of the investigation and the execution of the search warrant, he was responsible for transporting all other members of the household to and from work, appointments, school, *etc.*

He further alleges he was responsible for doing the shopping for the household, taking care of the household pets, and setting up maintenance for the vehicle and the home itself. He alleges this left him with limited amounts of time to dedicate to computer usage. He alleges this exculpatory [and] potentially useful evidence existed on the hard drives in digital form and would have provided an alibi defense for the dates and times of the downloads of the alleged contraband presented to the jury at trial. However, he alleges this evidence was destroyed in bad faith by FDLE and the Office of the State Attorney in January of 2017.

After reviewing the allegations, the court file, and the record, the Court finds to qualify as newly discovered evidence, "(1) The evidence must have existed but have been unknown by the trial court, the party, or counsel at the time of trial, and must not have been discoverable through the use of due diligence, and (2) the newly discovered evidence must be of such a nature that it would probably produce an acquittal on retrial or yield a less severe sentence." *Jones v. State*, 709 So. 2d 512, 521 (Fla. 1998) (*Jones II*). "Newly discovered evidence satisfies the second prong of the *Jones II* test if it 'weakens the case against [the defendant] so as to give rise to a reasonable

doubt as to his culpability.'" *Id.* at 526 (quoting *Jones v. State*, 678 So. 2d 309, 315 (Fla. 1996)).

> After reviewing the allegations, the court file, and the record, the Court finds this matter was explored at a prior February 24, 2017, Rule 3.850 evidentiary hearing and addressed in the Court's March 27, 2017, order. The Court finds even if this Court were to find that the hard drives were destroyed in bad faith and the hard drives contained exculpatory [and] potentially useful evidence, such would not produce an acquittal on retrial or yield a less severe sentence because evidence that Defendant spent a lot of time away from his house would not have disproved the State's case given the nature of peer-to-peer file sharing programs and the testimony presented at trial, including Defendant's confession whereby he admitted to downloading and having hundreds of images of child pornography. As such, the Court finds the alleged bad faith destruction of the hard drives does not constitute newly discovered evidence warranting a new trial.

"A due process claim based on lost or destroyed evidence comes under 'what might loosely be called the area of constitutionally guaranteed access to evidence.'" *Davis v. Sellers*, 940 F.3d 1175, 1186 (11th Cir. 2019) (quoting *Youngblood*, 488 U.S. at 55). "[T]he State's duty to preserve evidence is limited to 'evidence that might be expected to play a significant role in the suspect's defense.'" *Davis*, 940 F.3d at 1187 (quoting *Trombetta*, 467 U.S. at 488). "'To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" *Davis*, 940 F.3d at 1187 (quoting *Trombetta*, 467 U.S. at 489). "Additionally, 'the failure to preserve . . . potentially useful evidence does not violate due process unless a criminal

defendant can show bad faith on the part of the police.'" *Davis*, 940 F.3d at 1187 (quoting *Illinois v. Fisher*, 540 U.S. 544, 547–48 (2004)).

In an order denying Bullard's ineffective assistance of counsel claim based on the failure to investigate the hard drive, the post-conviction court described testimony presented at an evidentiary hearing that is relevant to the federal due process claim (Doc. 9-2 at 647–49) (state court record citations omitted)[2]:

> With respect to the evidence seized from the hard disk, Defendant testified that the information charged fifty counts of possession of child pornography and one count of promoting child pornography, but that the information did not list the specific times the files were alleged to have been downloaded. Rather, he stated, "the first count alleged a date range for the intent to promote and the other possession counts were the day of the search warrant being actually executed on the residence," on August 4, 2009. However, the files had been downloaded before law enforcement served the search warrant on his house.
>
> Defendant testified that his household computer was a shared computer, and his defense at trial was that anyone could have downloaded the illegal images because he shared the computer with his family members. He further testified that he was not home at some of the times the specific images were alleged to have been downloaded. Specifically, he opined that during that time, he was busy with doctor appointments for his mother and his animals, looking for work, taking his car for maintenance, and so on. He believes that if Mr. Mactavish had further investigated the case, he could have come up with an alibi defense for Defendant based on the fact that he could not have been available to download the files. However, Defendant appeared to recognize that Mr. Mactavish had

---

[2] In the order denying the federal due process claim, the post-conviction court referred to, and attached, this earlier order denying post-conviction relief. (Doc. 9-3 at 111) Consequently, the earlier order is part of the relevant record on federal habeas. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

advised him that the August 4, 2009, date controlled, because that was the date the search warrant was executed and the files were uncovered. In fact, Defendant expressly acknowledged that an alibi defense would not have exculpated him from possessing child pornography on August 4, 2009.

Mr. Mactavish testified that he has been an Assistant Public Defender since August 2002 (minus a five-week hiatus in 2004), and that he has represented individuals charged with possession of child pornography since 2009. He testified that he was assigned to Defendant's case immediately after Defendant's first appearance in August 2009. Mr. Mactavish testified that at no point during his representation of Defendant — from the first meeting all the way to trial — did Defendant deny activity with child pornography.

With respect to Defendant's specific allegations, Mr. Mactavish recognized that he could have hired a computer expert, and that it certainly would not have hurt, but that there was no reason for him to believe that doing so would have been beneficial. In particular, he testified that he never got any indication, from Defendant or otherwise, that someone else was responsible for the child porn on the computer, or that the computer was hacked, or that the images were left over from a previous owner.

Mr. Mactavish additionally expressed that [he] did not feel the need to retain a computer expert or to look more deeply into the electronic items because it would have been difficult to alibi someone for the entire three-week period the State discussed as the download period. Mr. Mactavish noted that computer experts tend to testify that when a person uses a peer-to-peer file sharing program — as Defendant did — the person can "start [his] computer to start downloading and go out and take a walk or leave the house and come back. And sometimes it takes minutes or longer, even hours to do downloads, depending on what [the person] is downloading." As such, it would have been possible for Defendant to start a download and leave the house, and for the file to complete downloading at a time

when Defendant was out of the house or otherwise away from the computer.

Mr. Mactavish further testified that Defendant never told him that he should investigate the computer because Defendant was not the one responsible for downloading the pornography. Mr. Mactavish also testified that, early on in the course of his representation of Defendant, Defendant wrote a monologue entitled "My Story," in which he never denied involvement but set forth reasons for mitigation.

The post-conviction court explained why evidence on the hard drive would not exculpate Bullard of possessing child pornography (Doc. 9-2 at 650–52) (state court record citations omitted):

The court finds credible Mr. Mactavish's testimony that Defendant never gave him a reason to suspect there was a reason to conduct a more in-depth investigation of the contents of the hard disk. Specifically, the court finds credible Mr. Mactavish's testimony that Defendant never denied having possessed child pornography and that Defendant never advised him that he did not download the images.

The court additionally finds persuasive Mr. Mactavish's testimony that he believed retaining a computer expert would have proved futile because, for purposes of proving the possession of child pornography offenses, the State simply needed to establish that [Defendant] possessed the images on August 4, 2009. To prove the offense of possession of child pornography, the State need only establish that the defendant knowingly possessed the images, the State need not prove that the defendant knowingly downloaded them. *See* § 827.071(5), Fla. Stat. (2009); Fla. Std. Jury Instr. 16.11 (Crim.) [Possession of Material Including Sexual Conduct by a Child]. Evidence that Defendant spent a lot of time away from his house would not have disproved the State's case, especially given the nature of peer-to-peer file sharing programs, as credibly testified to by Mr. Mactavish.

. . .

> In addition, the Court finds the presentation of evidence at trial establishing that Defendant spent a lot of time away from his computer would not have exculpated him. At trial, the State called Investigator Jay Best with the Office of the Attorney General's Child Predator Cyber Crimes Unit, who interviewed Defendant before his arrest and testified that Defendant confessed to downloading child pornography. Investigator Best also testified that Defendant authored a written statement in which he confessed to having hundreds of images of child pornography. In light of Defendant's confession, the Court finds that evidence from the hard disk that tended to establish Defendant was often away from home would not have altered the outcome of the proceedings. As such, Defendant has failed to establish how he was prejudiced by Mr. Mactavish's conduct.

In the order denying Bullard's application for leave to file a second or successive petition, the Eleventh Circuit reached a similar determination (No. 8:13-cv-2375-MSS-TBM, ECF No. 25 at 3–4):

> In his application, Bullard indicates that he wishes to raise one ground for relief in a second Section 2254 petition. Bullard contends that the State destroyed exculpatory evidence weeks prior to a post-conviction evidentiary hearing, in violation of Florida law and his due process rights. In support, Bullard alleges that the state habeas court granted him an evidentiary hearing on whether his trial counsel was ineffective for failing to pursue the contents of hard drives seized during a search of Bullard's house. Bullard alleges that these contents could have been used to establish an alibi defense; however, his trial counsel told him that the contents of the hard drives were not worth pursuing. Prior to the evidentiary hearing, the hard drives were destroyed, and while the Florida habeas court denied Bullard's ineffective assistance of counsel claim, it noted that the State had mishandled the hard drives by destroying them.

Here, Bullard cannot show that his proposed claim satisfies the statutory criteria of Section 2244(b)(2)(B) because, even if the State violated the constitution when it destroyed the hard drives, he cannot show by clear and convincing evidence that, but for this potential constitutional violation, no reasonable factfinder would have found him guilty. See 28 U.S.C. § 2244(b)(2)(B)(ii). The destruction of Bullard's hard drives, standing by itself, is unrelated to whether he is "guilty of the underlying offense" of possession of child pornography. *See In re Jones*, 137 F.3d at 1274 (quotation marks omitted). While Bullard alleges that the contents of the hard drives contained potentially exculpatory evidence, the contents themselves are not newly discovered evidence because they could have been uncovered during a reasonable investigation before his initial Section 2254 petition. *See In re Boshears*, 110 F.3d at 1540. Indeed, Bullard admits in his application that he knew about and discussed the contents of the hard drives with his attorney prior to trial.

At the evidentiary hearing, Bullard testified that, on August 4, 2009, police seized the hard drive at his home during execution of a search warrant. (Doc. 9-2 at 583) He testified that he intended to assert a defense that he did not possess the child pornography on the hard drive because other persons who lived with him also accessed and stored data on the hard drive. (Doc. 9-2 at 589) He contended that records related to appointments on the hard drive would have shown that he was not home when the computer downloaded some of the files that contained child pornography. (Doc. 9-2 at 589–91)

On cross-examination, Bullard admitted that he was home on August 4, 2009, and that he confessed to the investigator that he possessed child pornography (Doc. 9-2 at 594–96):

21

| | |
|---|---|
| [Prosecutor:] | Would that alibi defense have exculpated you from possessing child pornography on August 4, 2009? |
| [Bullard:] | On August 9, 2009, no. |
| [Prosecutor:] | Okay, because that's fifty-one counts of child pornography with a date of offense of August 4, 2009, correct? |
| [Bullard:] | That's correct. |
| [Prosecutor:] | And in fact, the jury got jury instructions that told them what the law is on possession of child pornography. Were you in court when that happened? |
| [Bullard:] | Yes, ma'am. |
| [Prosecutor:] | And the jury was not instructed that you have to look at when the porn was downloaded, but rather when it was possessed, correct? |
| [Bullard:] | Correct. |
| [Prosecutor:] | And your charging document[ ] is August 4, 2009? |
| [Bullard:] | Correct. |
| [Prosecutor:] | And you were home, correct? |
| [Bullard:] | Correct. |
| [Prosecutor:] | And you were in possession of that computer, correct? |
| [Bullard:] | At the time, I was not because I wasn't even on the computer at the time I was arrested. |

| | |
|---|---|
| [Prosecutor:] | Now — not what you were on, but you were in possession meaning you were in the residence where this electronic equipment was. |
| [Bullard:] | Oh, that's correct, yes. |
| [Prosecutor:] | Okay. And just so that we're clear, it's August 9, 2009? |
| [Bullard:] | Correct. |
| [Prosecutor:] | And with regards to what Mr. Mactavish may have done or didn't do, you were asked about a statement of particulars, but he did file a motion to preclude the State from using your inculpatory statement. Isn't that correct? |
| [Bullard:] | That's correct. |
| [Prosecutor:] | And that statement was to [the] investigator, Jay Best. Is that correct? |
| [Bullard:] | Correct. |
| [Prosecutor:] | Where Jay Best was showing you various still images from the child pornography that they found. Isn't that correct? |
| [Bullard:] | On his laptop, yes. Yes, ma'am. |
| [Prosecutor:] | Okay. And on that, you admitted to downloading and possessing child pornography. Isn't that correct? |
| [Bullard:] | That didn't come in until the second review. |
| [Prosecutor:] | That was what? I'm sorry. |

| | |
|---|---|
| [Bullard:] | He interviewed me twice. First one, he showed it to me and that was — of course, that was after we already asked for a lawyer, but that was not — that wasn't recorded. But the first interview he showed me the child pornography. He showed me the — the list of the files and I denied it. [He] went back in the house. They interviewed the rest — the rest of the people in the house, and then they interviewed me the second time. |
| [Prosecutor:] | And then you admitted. |
| [Bullard:] | That's where I admitted, yes. |
| [Prosecutor:] | Okay, so you admitted to downloading and possessing child pornography. |
| [Bullard:] | I did. |

Trial counsel testified that, during his representation in the case, Bullard never denied "activity with child pornography." (Doc. 9-2 at 607) Trial counsel testified that he moved to suppress Bullard's inculpatory statements to the investigator, and the trial judge denied the motion. (Doc. 9-2 at 610–11) Trial counsel testified that Bullard's ex-girlfriend provided to the prosecutor letters that contained admissions by Bullard that tended to prove that he possessed child pornography. (Doc. 9-2 at 611–12) Trial counsel testified that Bullard never identified any other person who was responsible for the child pornography on the hard drive. (Doc. 9-2 at 614–15) Trial counsel testified that Bullard also prepared for trial counsel a nineteen-page monologue titled "My Story," to explain what caused him to view child pornography. (Doc. 9-2 at 616)

Trial counsel testified that, if the trial judge had suppressed Bullard's statements, he would have argued that the prosecutor failed to prove possession because all persons who lived in the home had access to the computer in a common area. (Doc. 9-2 at 616) However, trial counsel explained that other family members in the home denied possessing the child pornography. (Doc. 9-2 at 617) Also, trial counsel testified that Bullard used a peer-to-peer file sharing program to download the child pornography. (Doc. 9-2 at 619) Because a file that contains child pornography may take over an hour to download, trial counsel reasonably inferred from the evidence that Bullard could have started the download, left his home, and returned after the download completed. (Doc. 9-2 at 619)

Bullard asserts that the law enforcement officer violated his federal right to due process by destroying evidence that proved that he was not home when some of the files that contained child pornography were downloaded. Because Bullard admitted to the investigator that he possessed child pornography, because Bullard's admissions in letters to his ex-girlfriend tended to prove that Bullard possessed child pornography, and because Bullard could have left his home while he downloaded child pornography on the peer-to-peer program, any violation of federal due process did not substantially and injuriously affect the jury's verdict. *Fry v. Pliler*, 551 U.S. 112, 121–22 (2007) (citing *Brect v. Abrahamson*, 507 U.S. 619, 638 (1993)).

The federal due process claim in Ground One is **DENIED**.

Accordingly, Bullard's Section 2254 petition (Doc. 1) is **DISMISSED** in part for lack of jurisdiction and **DENIED** in part as meritless. The Clerk is **DIRECTED** to enter a judgment against Bullard on the federal due process claim in Ground One and to **CLOSE** this case.

## DENIAL OF CERTIFICATE OF APPEALABILITY AND LEAVE TO PROCEED *IN FORMA PAUPERIS*

For the federal due process claim in Ground One, Bullard neither makes a substantial showing of the denial of a constitutional right nor demonstrates that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues that he seeks to raise. Consequently, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2). *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

Because the Court lacks jurisdiction to review the ineffective assistance of counsel claim in Ground One and the double jeopardy claim in Ground Two, the Court cannot issue a certificate of appealability for those claims. *Williams v. Chatman*, 510 F.3d 1290, 1295 (11th Cir. 2007).

**DONE AND ORDERED** in Tampa, Florida on January 12, 2026.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE